## GLOVER *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 140. Argued November 3, 1896. — Decided November 30, 1896.

A mortgage creditor, who was such at the time of the sale of real estate in South Carolina for non-payment of taxes to the United States under the tax acts of 1861, is not the legal owner contemplated by Congress in the act of March 3, 1891, c. 496, as entitled to receive the amount appropriated by that act in reimbursement of a part of the taxes collected; but the court, by this decision, must not be understood as expressing an opinion upon what construction might be justified under other facts and circumstances, and for other purposes.

THE case is stated in the opinion.

*Mr. James Lowndes* for appellants.

*Mr. W. S. Monteith* for interested parties.

*Mr. Assistant Attorney Gorman* and *Mr. Assistant Attorney General Dodge* for appellees submitted on their brief.

Mr. JUSTICE WHITE delivered the opinion of the court.

In 1861 Benjamin R. Bythewood was the owner of a lot in the town of Beaufort and a plantation in the county of the same name, both situated in Saint Helena Parish, State of South Carolina. On the occupation of Port Royal by the national troops in November, 1861, Bythewood left Saint Helena Island, as did all the white population of that island. Thereafter the property of Bythewood was assessed for taxes by the United States under the direct tax act of 1861, (12 Stat. 294,) and was sold in enforcement thereof. A portion of the plantation was subsequently redeemed.

Congress provided, by the act of March 2, 1891, c. 496, 26 Stat. 822, for refunding the direct tax collected under the act of 1861, and also for payment, under certain conditions, of a stipulated amount to the owners of property in Saint Helena Parish, which had been sold to collect such direct tax. This controversy arises from a claim made, under said act, by the representatives of Mrs. Verdier, that as their ancestor was a creditor secured by mortgage on the property of Bythewood at the date when it was sold under the act of 1861, they are therefore entitled to be paid the sum stipulated in the act of Congress, because as the representatives of such mortgage creditor they were the legal owners of the property within the meaning of the refunding law of 1891. The full text of the act of 1891, upon which the issue depends, is set out in the margin of the opinion in *McKee* v. *United States, ante,* 287.

By the fourth section of the act it is made " the duty of the Secretary of the Treasury to pay to such persons as shall in each case apply therefor and furnish evidence that such applicant was at the time of the sales hereinafter mentioned the legal owner or the heirs at law or devisee of the legal owner of such lands as were sold in the parish of Saint Helena and Saint Luke's in the State of South Carolina under the said acts of Congress, the value of said land in the manner following, to wit. . . ."

The question which therefore arises is this: is one who was a mortgage creditor at the time of the sale of the property, to

enforce the direct tax, the legal owner contemplated by Congress when it enacted the law of 1891?

Construing the words "legal owner" in a strictly literal and purely technical sense, it is clear that under the law of South Carolina a mortgage creditor was not such legal owner. Without considering whether a mortgage creditor under the common law might be technically held to be the legal owner within the meaning of the act of 1891, it is plain that the statute law of South Carolina made the position of a mortgagee merely that of a creditor with security. The law from which this resulted was passed in 1791, 5 Stat. S. C. 169, and therein it was provided:

"No mortgagee shall be entitled to maintain any possessory action for the real estate mortgaged, even after the time alloted for the payment of the money secured by the mortgage is elapsed; but the mortgagor shall be still deemed the owner of the land and the mortgagee as owner of the money lent, or due, and shall be entitled to recover satisfaction for the same out of the land . . . . Provided always, that nothing herein contained shall extend to any suit or action now pending, or when the mortgagor shall be out of possession, . . ."

As late as 1890 the Supreme Court of South Carolina construed this statute in *Hardin* v. *Hardin*, 34 S. C. 77, 80, and it was there held that it was well settled, by many decisions, that in South Carolina a mortgage of real estate is not a conveyance of any estate whatever, but is simply a contract whereby the mortgagee obtains a lien on the property mortgaged as a security for the payment of the debt, and that the mortgagor still remains, even after the condition is broken, the owner of the land.

Nor did the mere fact that Bythewood left Saint Helena Island, on the arrival of the Federal forces, convert Mrs. Verdier's title, which was one of mere security, into that of a legal owner. It is not found that she herself in fact took any possession of the property mortgaged to secure her debt.

As said in *Norwich* v. *Hubbard*, 22 Connecticut, 587, 594:

"A mortgagee, out of possession, is not the proprietor of

the mortgaged premises, and, in common parlance, is never spoken of as such, nor is he so recognized in a legal sense. To be sure, he is said to have the legal title, and as against the mortgagor, and for the purpose of enforcing his rights, as mortgagee, he has such title. He can convey no beneficial interest in the land mortgaged, as separate and distinct from the debt; and he has no such interest in it as can be levied upon, and taken in execution, by his creditors."

Even the common law right of a mortgagee not in possession to be considered the legal owner is so in a restricted sense, as is shown by *Great Falls Co.* v. *Worster,* 15 N. H. 412, 434, where the court said: .

" A mortgagee not in possession is not entitled to be treated as owner, except in a suit, or some other proceeding, to enforce his rights as mortgagee. Until entry, he has no right to exercise any acts as owner. He cannot claim the rents and profits. He cannot convey the land by deed, without transferring the debt. But he may assign the debt, and thereby assign and transfer the charge upon the land. He has no right to commit waste or destroy the property when in possession, until he has foreclosed."

Whilst it is hence clear that a strict and technical construction of the words " legal owner " would be conclusive against the claim which the mortgage creditors here assert, the language of the act of 1891 should not be measured and interpreted by this narrow rule. The context of that act makes it manifest that the word " legal," prefixed to the word " owner," was not intended to give it a purely artificial meaning. This is shown by the fact that in other places in the section where the word " owner " is found the same idea is conveyed by the use of that word without the prefix "legal." In interpreting the act, therefore, we must be guided not by any mere technicality, but must read its provisions by the light of the cardinal rule, commanding that the words must be apprehended, not in a forced and purely technical way, but in their general acceptation, and that the law must be interpreted in accordance with its spirit so as to effectuate the purpose intended to be accomplished thereby. *Maillard* v. *Lawrence,* 16 How. 251; *Smythe* v. *Fiske,* 23 Wall. 374.

Following these canons of construction, it cannot be denied that the general acceptation of the word "owner" is distinct and different — indeed, is the very opposite of the word "creditor," whether secured by mortgage or not. And that this meaning is the sense in which it was used in the law in question is demonstrated by the fact that nowhere therein is provision made for the classification and ascertainment of the rights of creditors for determining whether such rights had been duly preserved by proper registry or had been discharged by payment or barred by the statute of limitations. Indeed, there is one requirement of the act which excludes the implication that the word "owner" was intended to refer to a creditor. The payment to the owner, the fourth section commands, "shall be made by the Secretary of the Treasury to such persons as shall . . . furnish satisfactory evidence that such applicant was at the time of the sales, hereinafter mentioned, the legal owner." Now, whilst the time of the sale was an absolutely certain criterion by which to determine ownership *vel non*, it is an impossible test by which to ascertain the existence or non-existence of a creditor at the time the law was enacted. The mere fact that a creditor held security at a given time does not exclude the possibility of the debt having been paid subsequent to the sale, or of its having perished by limitation, or having been extinguished in some other lawful way. To hold that the payment must be made, therefore, to one who was a creditor *at the time of the sale* would imply that Congress intended to make a payment to one who might not be a creditor at the time of the payment, although he may have been such creditor when the sale was made.

A consideration of the purpose meant to be accomplished by the act of 1891 fortifies the foregoing conclusions. That it was avowedly intended to repay the tax which had been levied under the act of 1861 is beyond question. The provision as to payment to the owners of a certain sum for land sold under that act was clearly a result and consequence of the general purpose contemplated by Congress in passing the refunding law. It follows that the aim proposed by the act of 1891 was the return of the tax assessed under the act of

1861 and the repayment, in certain cases, to the owners of a named sum for lands which were assessed and sold under that act. Now, if it be clear that under the act of 1861 the owner and not the mortgage creditor out of possession was liable for assessment, it becomes equally clear that a mortgage creditor who was not assessable under the act of 1861 was not within the scope of the relief intended to be accomplished by the act of 1891. The act of 1861, in section 8 and subsequent sections, provided for a tax which was to be assessed and laid within the United States "on the value of lands and lots of ground, their improvement and dwelling houses." It contemplated an assessment against the owner of the property and not the creditor, since there was a personal liability entailed on the owner for the tax. Thus, by section 35, the collector was authorized upon default in the payment of the tax to distrain upon goods and chattels. Can it be contended that one who was a creditor with a mortgage security on the property of his debtor was liable to assessment for this tax, and hence to have his goods and chattels distrained for its payment? If it cannot be, then it follows that the mortgage creditor could not be assessed under the act of 1861. But if he was not assessable under that law, and the act of 1891 contemplates only the owners who could be so assessed, the deduction is irresistible that the mortgage creditor was not embraced in the word "owner" as used in the act of 1891. Nor is the claim here asserted by the mortgage creditor that he is within the term "owner," as used in the act of 1891, fortified by a reference to decisions construing that word in statutes regulating the enforcement of the right of eminent domain. Some courts, considering that word strictly in such statutes, have held it not to embrace a mortgagee. *Farnsworth* v. *Boston*, 126 Mass. 1; *Norwich* v. *Hubbard, supra.* Other courts, however, have held from a consideration of the context of the statutes which they were interpreting, and the evident purpose intended thereby to be subserved, that mortgagees were embraced. Even if *arguendo* it be conceded that the latter construction is a correct one, and that where the law seeks to divest all

and every title to land or estate and substitute the price therefor, that the word "owner" should receive a broad and liberal construction so as to embrace every right in and to the land, such concession would not affect or control the proper interpretation to be given to the word "owner" in the act under consideration. In conferring the gratuity provided by the act of 1891, Congress in no way manifested its purpose to make a *restitutio in integrum*, to create a fund which would take the place of the property and be the representative of its entire value, at the date of the sale, or of all the interests then resting upon or entering into the land. The act does not provide for ascertaining the value of the land at the time of the sale and for a return of the amount thereof, but simply fixes an arbitrary sum to be paid to the one who was the owner at the time of the sale. And that this sum was not considered by Congress as the whole value of the property, at the date of the sale, is demonstrated by the fact that, as to the lots in Beaufort, the amount to be paid was fixed at one half the valuation placed on them, by the United States, when they were assessed under the direct tax law. We cannot adopt a theory of construction which substantially asserts that the half is equal to the whole. To enforce, then, against the money given by Congress to the owner, the rights of the mortgage creditor on the theory that it represents the entire value of the property would be indulging in an untrue hypothesis to justify not only a repudiation of the express words of the law, but also a refusal to execute its manifest intent. Doubtless both the rights of the owner and those of the mortgage creditor were operated on by the tax sale. But the taxing law gave to either a right of redemption. If years after the sale and when the right to redeem had lapsed, Congress chose to give to the owner a proportion of the value of the property to compensate for his loss, we can see no equitable consideration supporting the claim that the money should be, by judicial construction, taken from the owner, in order to bestow it on the mortgage creditor. To so construe would substitute the judicial for the legislative mind.

This case is also unlike that of a factor who, by reason of advances upon goods in his physical possession, has acquired a quasi ownership in such goods, and who, to the extent of such advances, is entitled as special owner to sell the goods in his possession. *United States* v. *Villalonga*, 23 Wall. 35. Of course the construction which we give to the term "legal owner" or "owners" in the act of 1891, is limited to the precise question arising on this record, which is simply whether a mortgagee can properly be said to be embraced within the terms of the act of 1891 giving a particular sum to the legal owner or owners for lands sold by the government under the direct tax act of 1861. In determining, therefore, as we do, that the mortgage creditor is not embraced in the provisions of the act, we are not to be understood as expressing an opinion upon what construction might be justified under other facts and circumstances and for other purposes.

The judgment of the Court of Claims, disallowing the claim of the plaintiffs, having construed the act of 1891 in accordance with the foregoing views, was right, and is therefore

*Affirmed.*