### CELIS ALQUIER *v.* MÉNDEZ.

### APPEAL from the District Court of Humacao.

#### No. 686.—Decided March 7, 1912.

CONSTRUCTION OF LAW—DIVORCE—DEATH OF ONE OF SPOUSES AFTER ACTION WAS COMMENCED—CONTINUANCE OF ACTION BY EXECUTOR.—Pursuant to the law governing the matter, the death of one of the spouses after a suit for divorce has been commenced terminates the suit, and the executor of the deceased spouse cannot continue the action for the sole purpose of determining the share of the surviving spouse and his usufructuary interest in the estate of the deceased.

ID.—In considering ambiguous statutes courts should take into consideration the history of the times when they were enacted.

ID.—DIVORCE—DEATH OF ONE OF SPOUSES.—The history of the Act of March 9, 1905, relative to heirs-at-law is given in the opinion. Inasmuch as the purpose of that act was to reestablish the provisions with respect to natural children which had theretofore existed, and as a completely new divorce system has been established in Porto Rico the provisions of section 8 of that act with respect to the continuance of divorce suits after the death of one of the spouses should be construed as having been copied inadvertently from the former laws:

ID.—ALL PROVISIONS OF A STATUTE MUST BE GIVEN EFFECT—ABSURD RESULTS.—While it is a principle of law that all the provisions of a statute must be given effect, the courts have also declared that the principle should not be followed when said construction would lead to absurd results.

ID.—USELESS THINGS.—A law should not be so construed so as to make possible the doing of vain and useless things under cover of that law.

The facts are stated in the opinion.

*Mr. Jorge V. Domínguez* for appellant.
*Mr. Eduardo Acuña* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

In her lifetime Carlota de Celis Alquier began a suit for divorce against Ramón Méndez Cardona for cruel treatment and gross insults but she died apparently before answer filed. Her executor, Luis de Celis Alquier, appeared and asked that the suit be continued by him and in his name for the benefit of her heirs and for the sole purpose of determining the amount or share which Ramón Méndez Cardona had in her estate and what claim to a proportion of the usufruct. The defendant appeared and opposed the granting of the aplication of the executor. The court denied the latter's petition in a well-reasoned opinion.

When the defendant, in his opposition, says that the suit had for its object solely the rupture of the matrimonial bond, and that the action being a personal one and the complainant having died the bond itself was thereby broken, such defendant would seem to have stated an obvious proposition not requiring elaboration; yet by reason of the law and practice of divorce that existed in Spain in connection with the testate succession and by reason of some anomalous words in an existing statute, a wider discussion became and is necessary.

The court below points out that the case is without a precedent; that in Spain there could be none because the present divorce system is radically different from the former one; that in Spanish times the object of a divorce was to suspend the common life without dissolving the marriage while to-day divorce breaks the matrimonial tie; that the effects of a divorce were, first, the loss by the guilty spouse of all that had been received from the other without being able to claim anything; second, the dissolution of the conjugal partnership; and third, the loss of the administration of the wife's goods in case it was the husband who was the offending party; that in the present state of our laws a divorce is absolute and the action which the law concedes has for its sole object the grant-

ing of the dissolution of the matrimonial bond, which object appears most radically accomplished by the death of one of the parties and is so recognized by section 163 of the Civil Code which enumerates death, divorce and nullity of marriage as causes for such dissolution; that the action of divorce is not one of those that survive to the personal representatives; that the question of the property of the conjugal pair is an accessory question that can have no greater effect or importance than has the dissolution caused by death, the latter being the principal cause marked out by the law; and that it is logical that this cause of dissolution, namely, death, cannot coexist with that of divorce; and that to maintain the contrary idea would be to attempt to bring about by artificial means a state of affairs which had already happened naturally. This was part of the reasoning by which the court below arrived at the conclusion that the Legislature by the Act of March 9, 1905, did not intend that an action whose sole purpose had been accomplished by death could be prosecuted by the executor of the testatrix.

The section of law of March 9, 1905, which has given rise to the confusion is as follows:

"Section 8.—The widower or widow who, on the death of his or her spouse, is not divorced, or should be divorced by the fault of the deceased spouse, shall have a right to a portion in usufruct equal to that corresponding by way of legal portion to each of the legitimate children or descendants who have not received any additional portion.

"If one legitimate child or descendant only survives, the widower or widow shall have the usufruct of that third which is authorized by law to be applied to additional portions, the former preserving the naked ownership until, on the death of the surviving spouse, the full title is merged in him.

"*If the spouses should be separated by a suit for divorce, the result of the suit shall be awaited.*"

It is contended that the last sentence of the section gives the executor the right to continue the divorce suit for the

purpose of establishing the rights of the heirs of the wife against the husband.

The new institution of divorce was promulgated in this Island by the military government and recognized by the 8th section of the Foraker Act. The fundamental provisions of the divorce law were then incorporated into the Civil Code of 1902, sections 163 to 179, so that in 1905, when the law of March 9 was passed, the old system of divorce was completely abrogated by the new. But the Porto Rican Code of 1902 also changed the old Spanish Code in other respects and notably with regard to inheritances as set forth in sections 795, 796, 797, 801, 811, 812, 815, 821, 822, 823 and 824 of the Porto Rican Code. The law of March 9, 1905, repealed these provisions and placed on the statute books most of the laws in regard to testate succession which had been in force prior to the enactment of the Porto Rican Civil Code. Sections 163 to 179 in regard to divorce remained absolutely intact. The positive provisions of the law of March 9, 1905, are a virtual reenactment word for word of the corresponding provisions of the old Spanish Civil Code, namely, sections 806, 807, 808, 809, 813, 823, 824, 825, 828, 834, 835, 836, 837, 838, 839, 840, 841, 842, 843 and 844 of that Code. Section 834 of the Spanish Code corresponding to section 8 under discussion contains in addition the following words: "If there should have been a pardon or a reconciliation between the divorced spouses, the surviving one shall preserve his or her rights." This additional sentence was omitted by the Legislature possibly because of the similar or equivalent enactment of section 172 of the Porto Rican Civil Code. The legislative mind was intent on the matter of testate succession and was not specially directed to the realm of divorce.

When the sections specifically repealed by the law of March 9, 1905, are examined, a number of them would be seen to contain provisions with regard to acknowledged illegitimate children who, by the latter law, are excluded from the class of forced heirs. Section 821 of the Porto Rican Civil

Code which, for example, relates to the rights of a surviving spouse and for which the before-cited section 8 is an evident substitute, likewise spoke of a "legitimate child or an acknowledged illegitimate child," so that it appears from the act itself that one of the purposes of the law of March 9, 1905, was to put illegitimate children in a class apart from the legitimate children. Indeed, it is a matter of local history that the elimination of illegitimate children from the class of most favored heirs was a subject of agitation for several years and was the principal object of the law of March 9, 1905. Courts in considering ambiguous statutes should take into consideration the history of the time. *Aldridge et al* v. *Williams,* 3 How. (U. S.), 24; *United States* v. *Union Pacific R. R. Co.,* 91 U. S., 79; *United States* v. *Trans-Missouri Freight Ass.,* 166 U. S., 319.

The law of March 9, 1905, as we have seen, suppressed the provisions with respect to illegitimate children in general and then went on and reestablished the distinctions with respect to natural children that had theretofore existed. In doing so we think by inadvertence they included in section 8 the words "if the spouses should be separated by a suit for divorce the result of the suit shall be awaited." These words had coexisted with the divorce law as promulgated by the military orders before 1902, and we think that no one would have said in the year 1901 that the military orders and the Foraker Act had not done away with the possibility of the continuance of a suit for divorce after death of one of the parties—in other words, in 1901 the Spanish Civil Code was still in force but so was the institution of divorce, as established by American laws. The Legislature by restoring the provisions of the old Spanish Code did not thereby intend to change the law with respect to divorce that had existed before the Porto Rican Civil Code went into effect. In other words the *status quo* as it had existed before 1902 was restored, but the institution of the present divorce system had already made the contin-

uance of a divorce suit by the executor of one of the parties an impossibility.

If it could be supposed that the Legislature intended to give the executor the right to continue a divorce suit, yet it failed to provide any means or machinery for that purpose. It was *casus omissus* in the law.

The sole object and purpose of a divorce suit continued to be the judgment of divorce, or, in other words, the breaking of the matrimonial bond.

We have seen that section 8 was a substitute for section 821 of the Civil Code and that section 821 needed a substitute by reason of its provisions with respect to illegitimate children.

While it is a principle of the law that all provisions of a statute must be given effect, along with this principle the courts have also declared that the principle should be followed unless such construction would lead to absurd results. *Glover* v. *United States,* 164 U. S., 298; *United States* v. *Fisher,* 2 Cranch (U. S.), 386; *Bailey* v. *Commonwealth,* 74 Ky., 688; *Pond* v. *Maddox,* 38 Cal., 572.

The absurd results that would follow would be to permit a suit to continue where its object had already been attained. Viewed from another aspect, if the result of the suit is to be awaited, an executor would have to wait forever because no means for continuing a suit for divorce are provided in the law, and no divorce can be granted between parties one of whom is already dead, and the matrimonial bond thereby dissolved. The law does not expect a man to do vain and useless things. Broom Maxims, 252, 25 Cyc., 220, and cases cited.

Furthermore, section 129 of the Civil Code of 1902 provides clearly and expressly that prior to the death of one of the marital pair the marriage could only be dissolved in the cases fixed by the law which, according to section 163, are divorce and nullity of marriage. In view of such positive enactments of the law with respect to the effect of divorce the only way in which a change or exception could be deemed to be in

the mind of the legislator would be by some equally positive provision; and the words of the law of March, 1905, have not the clearness and directness necessary to effect a change in the system already established.

Moreover, under the present divorce system the separation of which the law speaks as a legal condition, no longer exists, as it existed under article 68, No. 1, of the Spanish Civil Code. There, at the beginning of a divorce suit the court by order or otherwise decreed the separation of the spouses. The separation that was understood in prior times does not exist to-day, and from the very nature of things a cause of action does not survive the death of a party where the only relief sought is the dissolution of the marriage relation. *Kirschner* v. *Dietrich,* 110 Cal., 503; *MrCurley,* v. *McCurley,* 45 Am. Rep., 717, 720; *Kimball* v. *Kimball,* 82 Am. Dec., 194.

The judgment must be affirmed.

*Affirmed.*

Justices MacLeary, del Toro, and Aldrey concurred.
Mr. Chief Justice Hernández dissented.

### DISSENTING OPINION OF MR. CHIEF JUSTICE HERNÁNDEZ.

I regret to differ from the opinion of my learned colleagues, on the grounds which I will now proceed to state.

On June 17, 1910, Carlota de Celis Alquier brought a suit for divorce in the District Court of Humacao against her husband, Ramón Méndez Cardona, and after alleging cruel treatment and gross insults, and the fact that there was certain community property to be liquidated upon the dissolution of the conjugal partnership, and the absolute lack of progeny, concluded with the prayer that the court issue a decree dissolving the marriage bonds with costs against the defendant, and that such other proceedings be had as might be proper under the law.

On January 7 of last year, while service of notice upon defendant was pending, Luis de Celis Alquier appeared before the said court as the testamentary executor of Carlota de Celis Alquier, who died on August 8, 1910, asking that he be allowed to prosecute the suit for divorce in his name as the executor of plaintiff's estate for the benefit of the heirs, and solely for the purpose of determining the amount or share which Ramón Méndez Cardona had in her estate and what claim he had to a proportion of the usufruct.

On January 17 of that same year Ramón Méndez Cardona personally appeared in that suit to assert his own rights, and filed a motion four days thereafter opposing the granting of the application of Luis de Celis Alquier for the substitution of the plaintiff and for the continuation of the divorce suit to its final determination, on the ground that the sole object of the suit filed by Carlota de Celis Alquier was the dissolution of the marriage, and that the plaintiff having died the marriage was dissolved and the bonds forever broken.

The motion of Luis de Celis Alquier and the answer opposing it were taken under advisement, and the former, anticipating favorable action on his motion, filed an amended complaint; but on March 13 the court rendered a decision overruling the motion with costs against the petitioner, who thereupon brought the case up to this Supreme Court on appeal.

We shall consider this appeal in the light of the legal provisions applicable to the case.

Section 69 of the Code of Civil Procedure says:

"An action or proceeding does not abate by the death or disability of one of the parties  *  *  *  if the cause of action or proceeding survives or continues.  In case of the death  *  *  *  of a party, the court, on motion, may allow the action or proceeding to be continued by or against his representative or successor in interest  *  *  *."

Section 51 of "An act relating to special legal proceedings," approved March 9, 1905, is as follows:

"It shall be the duty of the administrators and, while they are being appointed, of the executors, to represent the decedent in all legal proceedings begun by or against him before his death  *   *   * and the executor or administrator shall be substituted as a party to the action."

In view of the legal provisions just quoted, there is no question but that Luis de Celis Alquier can represent Carlota, of the same surname, in any and all actions or proceedings where the cause survives or continues, and all that remains for us to consider is whether or not the cause of action involved in this suit continued or survived after the death of Carlota de Celis Alquier.

For the purpose of accomplishing this reference must be had to the local substantive laws in relation to the doctrine laid down by the Supreme Court of the United States in *Patton* v. *Brady,* 184 U. S., 612:

" 'Congress,' says that august tribunal, 'has not attempted to prescribe the causes which survive the death of either party.' Section 955, Revised Statutes, provides that:

" 'When either of the parties, whether plaintiff, or petitioner, or defendant, in any suit in any court of the United States, dies before final judgment, the executor or administrator of such deceased party may, in case the cause of action survives by law, prosecute or defend any such suit to final judgment.'

"This does not define the causes which survive. In the absence of some special legislation the question in each case must be settled by the common law, or the law of the State in which the cause of action arose."

Under our substantive law, an action for divorce owing to its peculiarly personal nature neither survives nor continues, but is extinguished after the death of one of the parties.

Section 129 of the Civil Code provides that marriage may

be dissolved before the death of either party in the cases expressly provided for in the same Code, namely, by the death of the husband or wife, by divorce legally obtained, and by the annulment of the marriage; and, under section 173 of the same Code, a divorce carries with it a complete dissolution of all matrimonial ties, and the division of all property and effects between the parties to the marriage.

Since the purpose of a divorce suit is the breaking of the matrimonial bond and ultimately results in the division of all property and effects between the parties, this case being one where the dissolution of the matrimonial bond has been accomplished by the death of Carlota de Celis Alquier, the complaint, which seeks an end already accomplished, cannot subsist. But cannot the suit already commenced be continued, not with the view of obtaining the divorce, but for the purposes set forth in the motion of Luis de Celis Alquier?

Sections 8, 10 and 11 of the Act of March 9, 1905, to amend certain sections of the Civil Code, establish the rights of the widow or widower who, at the death of the other party, is not divorced, or is so divorced by the fault of the deceased party, and the first of the sections cited provides that *"if the parties should be separated by a suit for divorce the result of the suit shall be awaited,"* a provision which also governs the other two sections.

So clear and conclusive a provision of law does not require any construction, and it should by all means be complied with if its object is to determine the rights of the party who at the death of the other was separated, in which case the proper thing to do is to await the result of the suit, or, in other words, that a judgment be rendered deciding whether or not the ground for divorce alleged was found to exist.

Following one of the rules of legal hermeneutics, the words of a law should always be so construed that they may have some effect: *Verba accipienda ut sortiantur effectum.* Therefore a construction whereby a word or clause of a law is rendered meaningless should not be accepted, for it is not

to be believed that legislators would ever utter words without giving them some meaning or implying a command.

The above principle has been upheld by the Supreme Court of the United States in *Washington Market Co.* v. *Hoffman*, 101 U. S., 115:

" 'We are not at liberty to construe,' says that high tribunal, 'any statute so as to deny effect to any part of its language. It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word.' As early as in Bacon's Abridgment, section 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void or insignificant.' This rule has been repeated innumerable times. Another rule equally recognized is that every part of a statute must be construed in connection with the whole so as to make all the parts harmonize if possible and give meaning to each."

The case at bar gives us an opportunity to apply the legal principle just quoted absolutely without fear of being led into any absurd deduction or conclusion. It would be an absurdity to continue a suit for divorce where the sole purpose is the dissolution of the marriage bonds which by the death of one of the parties have already been dissolved; but it would not be an absurdity to continue the suit if the purpose is to ascertain whether or not there is a just ground for divorce, and to establish the rights of the surviving party.

Moreover, the disinheriting of the widower authorized by section 832 of the Civil Code may be assailed by bringing a suit against the representative of the deceased party in which suit the legal ground for divorce set out in support of the disinheritance must surely be the object of discussion solely for the purpose of either annulling or confirming the disinheritance. This being so, is there any reason why, where a proper cause for divorce exists, as contended by the executor of Carlota de Celis Alquier, a divorce suit, commenced by the party who subsequently died, cannot be continued solely to

determine whether or not the surviving party is entitled to a share of the inheritance?

Not only the letter but the spirit of the law as well demand that the suit for divorce already commenced be continued for the purpose of establishing the rights of the surviving party.

In connection with this matter, the illustrious commentator, Scaevola, in commenting on sections 834, 835, 836, 837, 838 and 839 of the Civil Code, which are the same as sections 8, 9, 10, 11, 12 and 13 of the Act of March 9, 1905, says:

"The real union and the living together of the parties operate so strongly and decisively upon the usufructory rights of the surviving party that the legislator was led to write the statutory expression that 'when a decree in a suit for divorce is still pending the result of the suit shall be awaited.' The mental process which led the legislator to enact this provision was, without doubt, of this trend: A divorce suit results in the separation of the parties. (Sec. 68.) A temporary legal statute cannot have permanent legal effects. If the acquisition or loss of the usufructuary rights of the surviving party depends upon whether or not the parties were legally united at the time the canjugal partnership was dissolved, it stands to reason that if a suit for divorce is still pending its results should be awainted before the usufruct is either granted or refused.

"The legislator holds that right in suspense prevents its moving in the direction of the surviving party while the decree is pending, and makes no exception of any case whatsoever  *  *  *.

"Should the innocent party die, or the delinquent party survive,  *  *  *  the result of the suit shall be awaited, because the success or failure of the surviving party to acquire the usufruct depends upon the favorable or unfavorable result of the divorce suit. This is a case where the divorce does exercise a decisive influence upon the existence of usufructuary rights, and where it is necessary to await a decision of the court in which both the alleged delinquent party and the heirs of the innocent one are equally interested, for the reason that a decision favoring the one works hardship on the other. The existence of usufructuary rights depending upon the decision of the suit natural reason forces us to wait until such decision has been made known to us.

"The contention that the heirs of the deceased party have power to continue the suit apparently disagrees with the extremely personal character of the issue here, to which support is lent by the provisions of section 106 of the Code, that divorce may be applied for only by the innocent party; but we should always bear in mind the fact that if the discussion of a divorce is centered upon this point, it is principally in relation with the civil effect of the divorce. And this question presupposes certain duties and obligations which are, therefore, transferable to the heirs of the deceased party."

The divorce suit commenced by the innocent party for the purpose of establishing the rights of the surviving party and the result of which should be awaited according to an imperative statute should be continued by the executor, after having secured the required permission of the court, in the same manner that the Code of Civil Procedure provides for the prosecution of ordinary actions. The executor, Luis de Celis Alquier, attempted to bring an action leading to that end. No special procedure was enacted by the legislators because it was deemed unnecessary. They thought it was sufficient to provide that the result of the suit should be awaited before continuing it in the ordinary manner for the sole purpose, we will repeat, of determining the rights of the surviving party.

There can be no question, therefore, that a divorce suit may be continued for the purpose of settling the question of whether or not the ground alleged exists; but it is a requisite condition that both parties be separated at the death of the one bringing the suit. What is that separation spoken of by the law?

Section 68 of the Spanish Civil Code provides that, once the complaint in a suit for separation or divorce has been filed and admitted, the separation of the spouses under all circumstances shall be one of the orders to be given; hence, in all suits for divorce the separation of the parties, by the order of the court, always took place. But this section of the law has been omitted in the Revised Code of Civil Procedure,

where there is no provision concerning the separation of the parties other than that contained in section 167, which says:

"If a wife who is suing for divorce shall have left or declared her intention of leaving the domicile of the husband, the district court shall designate the house in which she shall reside pending the termination of the suit."

Is the separation referred to in the foregoing section that which is required in order that the suit may be continued? We believe not, since according to the views set forth in the brief of the learned counsel for respondent the right which that section recognizes is to be exercised exclusively by the wife and is of a substantially elective nature ,so much so that if its enforcement is refused by the wife the husband would then be under the obligation to support her in the conjugal domicile during the pendency of the suit. The rights of the wife and of the husband will not be the same in that case, since those of the husband would depend on the will or caprice of the wife.

Since no resort may be had to the old Civil Code for the purpose of determining the real meaning of the separation of the parties in a suit for divorce seeking the determination of the share of the surviving party, by the repeal of section 68, which provided that the separation in divorce cases shall always be judicially ordered, nor to section 167 of the Revised Civil Code for the reason already given, what is then the interpretation that should be given to that term, as under the rule of construction alluded to hereinbefore it must have one?

It is a well-settled rule of hermeneutics that words used in the text of laws should be regarded in their own natural and genuine meaning, excepting where the legislator evidently placed upon them an inappropriate or exceptional significance.

Separation, according to the dictionary of the Royal Spanish Academy, is "the act or effect of separating," and to separate means "to keep a person or thing out of the reach

or proximity of another.'' Hence, a spouse shall be deemed to be out of the proximity or contact of the other when they are both living under a separate roof, in which case they are said to be separated. And it is unnecessary that such separation be obtained by a judicial order since under the Act of March 9, 1905, this requisite is not made necessary. In order that the suit may be continued to final judgment, and, of course, too, that the usufructuary rights of the widower should either be granted or refused, it is sufficient that the parties be separated by divorce.

We find this doctrine contained in section 832 of the said Revised Code, wherein the causes properly leading to the disinheritance of one of the parties by the other, including that resulting in divorce, are set forth, the closing paragraph of which reads as follows:

''In order that the causes which afford ground for divorce may not also afford ground for disinheritance, it is necessary that the spouses shall not live under the same roof.''

The case here is one where the legislator did not require the issuance of a judicial order compelling the parties to live under a separate roof, the only condition positively required to afford ground for disinheritance by any of the causes leading to divorce being ehe separation of the parties—that is, that the parties should not live under the same roof. There is no reason justifying the necessity of a separation by an order of the court before a suit for divorce may be continued solely to determine the rights of the surviving party.

We are of the opinion that the separation required for continuing a divorce suit still pending is the same separation required by the Civil Code for disinheriting on a proper ground for divorce—that is, that the parties should not be living under the same roof. The reason for such requisite is the same in both cases, to wit, that if both parties are living together the presumption will be that they have been reconciled.

Now then, it having been positively stated in the complaint of June 17, 1910, that the defendant has been absent from the conjugal domicile since May 18 ultimo, the death of plaintiff having occurred on August 8 of that same year while the complaint was still awaiting action, it is clear that when the plaintiff's death occurred both parties were separated by the suit for divorce, and it follows that the separation required by law for continuing this suit was then effected.

In view of the foregoing reasons the order of March 13, 1911, from which this appeal has been taken should be reversed, and Luis de Celis Alquier, as executor of Carlota de Celis Alquier, should be permitted to continue the suit for divorce commenced by her in her lifetime against her husband, Ramón Méndez Cardona, solely for the purposes sought by him.