### THE PEOPLE *v.* RAMOS.

APPEAL from the District Court of Ponce.

No. 481.—Decided December 16, 1912.

CRIMINAL LAW—ARREST AT NIGHT—FELONY—MISDEMEANOR—WARRANT OF ARREST—ENDORSEMENT BY MAGISTRATE—POWERS OF POLICE—CRIME COMMITTED IN PRESENCE OF POLICE—CONSTRUCTION OF LAW.—Paragraph 1 of section 116

of the Code of Criminal Procedure empowers a policeman to arrest a person who has committed a public crime in his presence, whether it be a felony or a misdemeanor, at any hour of the day or night, without a warrant of arrest bearing the endorsement of a magistrate authorizing the arrest at night, and said power is not limited in any manner by the provisions of section 120 of the same code.

ID.—ARREST AT NIGHT—WARRANT OF ARREST—CONSTRUCTION OF LAW.—The limitation with respect to arrests at night provided for by section 120 of the Code of Criminal Procedure refers only to the arrest of a person by virtue of a warrant of arrest issued by competent authority before whom charges have been made against said person.

ID.—INTERPRETATION OF ''CHARGED''—CRIMINAL COMPLAINT.—The word ''charged'' as used in section 120 of the Code of Criminal Procedure is not equivalent to the word ''imputed,'' but means that there exists a complaint made by some person in whose presence, perhaps, the crime was committed, which complaint was made to the proper official for the purpose of having him issue the corresponding warrant of arrest.

ID.—CONSTRUCTION—INTERPRETATION OF ''CHARGED''—PRELIMINARY INVESTIGATION ON ACCUSATION.—In legal phraseology a ''person charged'' with a crime is a person against whom a complaint has been made before the proper authority in the form ordinarily followed in judicial proceedings. In the eyes of the law a person is ''charged with a crime'' only when he is called upon in a legal proceeding to appear and answer to such charge. Investigations made by *fiscals,* examining magistrates and even grand juries do not in themselves determine the existence of a ''criminal charge.''

ID.—STATUTES ADOPTED FROM OTHER STATES—CONSTRUCTION BY COURTS OF STATES FROM WHICH STATUTES ADOPTED.—The rule requiring the acceptance of the construction given to a statute by the courts of the State from which the same has been adopted is not of universal application, but is subject to many exceptions and limitations.

ID.—EXPRESSIO UNIUS EST EXCLUSIO ALTERIUS.—It is held in the case at bar that this maxim is not applicable. Very often the *exclusio* is the result of inadvertance or omission on the part of the legislator, and in such cases as well as in those where the application of said maxim leads to inconsistency or injustice the maxim should not be applied.

ID.—CONSTRUCTION OF STATUTES—CONSTRUCTION SHOULD HARMONIZE ALL PROVISIONS OF TITLE.—Sections of a code should be construed with their object in mind as it appears from the title of the chapter and in a manner to harmonize all the provisions of the title.

ID.—CONSTRUCTION OF STATUTES—INTENTION OF LEGISLATOR.—The fundamental rule for the construction of a statute, to which all other rules are subordinate, is that the statute should be construed in accordance with the intention of the legislators.

ID.—CONSTRUCTION OF LAW—ORDINARY MEANING OF WORDS—ABSURDITY OR INCONSISTENCY—INTENTION OF LEGISLATOR.—The ''golden rule'' in determining the intention of the legislature in enacting a law is to adhere to the grammatical and ordinary meaning of the words used in the law unless such meaning would lead to an absurdity or produce some inconsistency between different parts of the law, in which case the grammatical and ordinary meaning of the words may be modified so as to avoid that absurdity or inconsistency in the law.

ID.—ARREST AT NIGHT WITHOUT WARRANT—CONSTRUCTION OF LAW.—In the case
at bar it was held that the construction given by the trial court to sections 116
and 120 of the Code of Criminal Procedure to the effect that a policeman can-
not arrest at night a person who has violated the law in his presence without
a warrant of arrest bearing the endorsement of a competent authority ex-
pressly authorizing the arrest at night would annul the statutes intended to
preserve the public peace and good order and protect honest persons, and a
condition of affairs closely resembling anarchy would follow.

The facts are stated in the opinion.

*Mr. Charles E. Foote, fiscal,* for The People.

The respondent did not appear.

MR. JUSTICE MACLEARY delivered the opinion of the court.

On June 17 last an information was filed in the District
Court of Ponce by the *fiscal* of that district charging Víctor
Ramos with an offense against the executive department of
the Government substantially in this: That the accused, on
a date prior to the filing of the said information—that is to
say, about March 27 of this year—in the city of Ponce, a part
of the judicial district of the same name, voluntarily, crimi-
nally, illegally, and maliciously, knowing that Pedro Morales
was an executive officer acting as an Insular policeman, pre-
vented him by violence from fulfilling his duty in attempting
to arrest Epifanio Rosado, who was committing a misde-
meanor, to wit, an indecent exposure of his person, violently
and forcibly rescuing the said Rosado from the custody of the
policeman and enabling him to escape.

The accused pleaded not guilty, and the case, being a fel-
ony, was set down for trial before a jury on August 5, 1912,
and tried on that day. Immediately after the only witness
for the prosecution, Pedro Morales, the Insular policeman
mentioned in the information, had testified, the judge, on
motion of the defendant, ordered the jury to bring in a ver-
dict of acquittal, in favor of the accused, declaring him to
be not guilty of the offense with which he was charged in
the information; and thereupon the jury returned a verdict
accordingly, and the accused, Víctor Ramos, was discharged
by order of the court. The *fiscal* promptly took an exception

to this ruling of the court and gave notice of appeal, and brings the record here, containing a statement of the case and a bill of exceptions duly approved.

The testimony of the policeman, Pedro Morales, as given on the trial and contained in the record, is to the effect that one night, in the month of March of the current year, he was wearing his uniform and performing his duty, in the neighborhood of the *Plaza de la Abolición* (Abolition Square) in the city of Ponce, and that he saw Epifanio Rosado about to urinate in the street, between a hydrant and an electric-light post, and called upon him to refrain, as there were houses in the close vicinity and he could easily be seen by girls and women therefrom, and the witness told the said Rosado that if the wished to urinate he could go to the *cafetín*. That thereupon Rosado proceeded a little way and said, "To hell with the police! I will urinate here," which he proceeded to do, exposing his person in so doing. That the policeman, in his capacity as such, then arrested Rosado, and was about to take him to jail when the accused, Víctor Ramos, intervened to prevent the arrest, and said to Rosado, "Don't go. Don't go anywhere," and to the policeman, "This man is not going anywhere;" to which the policeman replied, "He is going and you too." Thereupon, in attempting to arrest both the men, a struggle took place among the three, to wit: Epifanio Rosado, Víctor Ramos, and the witness, the policeman who gave testimony, during which Víctor Ramos took hold of the policeman by the coat and struck him, while Rosado made his escape. That about this time other policemen arrived and arrested Ramos only. This is in effect all the testimony given in the case.

The court, in its charge to the jury, stated the offense committed by Epifanio Rosado to be that of an indecent exposure of his person, which is, under the statute, a misdemeanor, and that under the law an arrest for a misdemeanor could not be made during the hours of the night, without a judicial order signed by competent authority, with

an indorsement thereon expressly stating that such arrest could be consummated during the nocturnal hours, and that the action of the policeman in attempting to make the arrest of Rosado was not only not justified but expressly prohibited by law, and that the violence employed by Víctor Ramos was not to prevent an executive officer from fulfilling his duty, and that consequently there was no violation of section 84 of the Penal Code. This ruling of the District Court of Ponce, as is readily seen, is to the effect that under our statutes the arrest of a citizen, during the hours of the night, is not authorized, when the offense which he is committing is a misdemeanor only, even though it may be committed in the presence of the policeman making the arrest, unless such officer has in his possession a warrant of arrest on the back of which is indorsed an order, properly signed by a magistrate, to carry the same into effect during the hours of the night.

Let us examine the statutes in regard to this matter.

Section 116, paragraph 1 of the Code of Criminal Procedure, states:

"A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

"1. For a public offense committed or attempted in his presence. * * *."

"By section 117. A private person may also arrest another:

"1. For a public offense committed or attempted in his presence. * * *."

Section 118 authorizes a magistrate to cause an arrest; by an oral order, where the same is committed in his presence.

Section 119 authorizes "the person making an arrest" to summon a sufficient number of persons to assist him therein.

Section 120 of the same code reads:

"If the offense charged is a felony, the arrest may be made on any day, and at any time of day or night. If it is a misdemeanor,

the arrest cannot be made at night, unless upon the direction of a magistrate, endorsed upon the warrant.''

The district court held, as has been seen, in its charge to the jury, that section 116 was limited by section 120 of the same code; and that the policeman in this case could not make the arrest at night without a warrant properly endorsed. This appears to us an improper interpretation of the statutes. It almost paralizes the power of the police during the hours of darkness. We do not think that there is any conflict between the sections quoted when they are properly construed. They should therefore be interpreted so that both can be held to have effect. The first-mentioned section authorizes the arrest by a peace officer of a person who has committed a public offense, whether it may be a felony or a misdemeanor, in the presence of such peace officer, and makes no distinction as to the hours or the time of the day or the night. The arrest may be made at any time. The terms of this section are general and are not limited by any legal enactment; unless it may be section 120 of the same code as held by the district court. That section, when properly construed, signifies that when a person has been *charged* with a misdemeanor, in accordance with legal procedure, a warrant of arrest issued by virtue of such *charge* cannot be carried into effect during the night, unless it is expressly so directed or authorized by a magistrate. The restrictions set forth in this section refer to charges made before a competent authority in connection with which warrants of arrest have been issued, but such restrictions were not intended to affect the duties of a peace officer as set forth in section 116 of the same code. The mistake into which the trial court inadvertently fell, probably arises from a misconstruction of the Spanish word *"denunciada"* (charged), as used in section 120, which the court held to be equivalent to *"imputada"* (imputed), holding that *"denunciada"* signified an informal charge or imputation made by the police-

man, in whose presence the offense may have been committed, as well as a formal charge made before a competent authority as a basis for the issuance of a warrant.

The trial court, in supporting its opinion, asserts that the corresponding section in our code was taken from section 840 of the Penal Code of California, which says:

"If the offense charged is a felony, the arrest may be made on any day and at any time of the day or night. If it is a misdemeanor, the arrest cannot be made at night, unless upon the direction of the magistrate, indorsed upon warrant, *except when the offense is committed in the presence of the arresting officer.*"

It will be seen by comparison that section 116 of our code differs from section 840 of the California Code in the omission of the words, "*except when the offence is committed in the presence of the arresting officer.*" From this omission, it is argued that our legislature, taking the Porto Rican statute from the Californian, upon reproducing the said section in our code, expressly omitted the only exception in the said section set forth, to the prohibition of an arrest of a person by night for a misdemeanor, except when expressly so authorized to make the arrest by virtue of a warrant and the indorsement thereon. It is contended that this is clear and conclusive proof of the intention of the legislature absolutely to forbid or prevent a peace officer from effecting an arrest for a misdemeanor committed in his presence, unless under express order from a magistrate.

The verb "*denunciar*" (charge) is not synonymous with "*imputar*" (impute), but has a legal signification well defined by jurisprudence. *Charged with a crime* is an expression which means more than to say that a person is suspected of a crime or that the commission thereof is imputed to him. It signifies that a complaint or an information has been filed against him before some court, in the form ordinarily followed in judicial proceedings. (*United States* v. *Patterson,* 150 U. S., 68; Morgan *ex parte,* 20 Fed. Rep., 308;

Ryan *ex parte,* 44 Cal., 555; *People* v. *Garnett,* 129 Cal., 364; 61 Pac., 1114, 1115; *Day* v. *Inhabitants of Otis,* 90 Mass., 478 and 479.)

A "criminal charge," strictly speaking, exists only when a formal written complaint has been made against the accused before a magistrate, and a prosecution duly initiated. It is true the popular understanding of the term is the same as "accusation," and it is freely used with reference to all accusations, whether made orally, privately in conversation, publicly in the newspapers, or otherwise. But in legal phraseology the term "charge" is properly limited to such accusations as have taken definite shape in a formal prosecution. In the eyes of the law a person is "charged with crime" only when he is called upon in a legal proceeding to appear and answer to such a charge. Mere investigations set on foot by prosecuting officers, or even the inquiry and consideration instituted by examining magistrates, or by the grand jury, of the propriety of initiating a prosecution, do not in themselves create a "criminal charge." "And such has been held to be the meaning of the word as used in Revised Statute, section 827, giving per-diem fees to United States commissioners for hearing and deciding criminal charges, being restricted to formal written complaints which have been legally preferred, and it does not include the examination of complaining witnesses to determine whether a warrant shall issue." (*United States* v. *Patterson,* 150 U. S., 65.)

It is true that section 120 of our code may have been taken from section 840 of the Penal Code of California, but it may also have been taken from the Montana or the Idaho Code; which latter is the more likely, because they are exactly the same as ours, and were probably themselves taken from the earlier California Code, omitting the last clause. It will be found that section 120 of the Code of Criminal Procedure of Porto Rico is a substantial copy of section 1636 of the Penal Code of Montana which is identical with section 5242 of the Penal Code of Idaho, which seems to us

sufficiently to show that the section of our Code of Criminal Procedure may very probably have been taken from the corresponding code of one of these latter States, and not from the California Code. Besides, the rule requiring courts to follow the construction put upon a statute by the Supreme Court of the State from which the legislature may have borrowed it is a general rule and is not of universal application but is subject to many exceptions and limitations. (*Mann v. Carter,* 74 N. H., 345; 15 L. R. A. [N. S.], 150; *T. & P. Ry. Co.* v. *Humble,* 181 U. S., 65; *Coulam* v. *Doull,* 133 U. S., 216; *State* v. *Campbell,* 73 Kan., 688; 85 Pac., 784; Endlich Interpretation of Statutes, sec. 371; 36 Cyc., 1154, 1157.)

In support of the decision of the court below the well-known maxim *"Expressio unius est exclusio alterius"* is quoted and sought to be applied. It has no proper application to this case. It is the Porto Rican Code and not the Californian that we are called on to interpret. Our code has no exception which calls the maxim into play. The exception occurs only in the California Code. But let us briefly examine the authorities in regard to that maxim and the force which should be given thereto.

In 2 Bouvier's Law Dictionary, 353, we are given the definition thereof and referred to some authorities; thus: *"Expressio unius est exclusio alterius"*—The expression of one thing is the exclusion of another. (Co. Litt., 210; Broom's Leg. Max., 650, 668; 3 Bingh. N. C., 85; 8 Scott N. R., 1013; 12 M. & W., 761; 16 id., 244; 2 Curt. C. C., 365; 6 Mass., 84; 11 Cuch., 328; 98 Mass., 29; 117 id., 448; 3 Johns. Ch., 110; 36 Fed. Rep., 880; 74 id., 535; 104 U. S., 25; 4 Biss., 35; to which may be added Beal's Cardinal Rules of Interpretation, p. 78; 1 Federal Statutes Annotated, p. 69 *et seq.;* Maxwell on Int. Stats., 504, 529.)

In commenting on the maxim *"Expressio unius est exclusio alterius,"* Dr. Broom observes that great caution is requisite in dealing with it, as it is not of universal application, as was remarked by Lord Campbell in the case of *Saunders*

v. *Evans* (8 H. L., cases 729), but its application depends upon the intention of the maker as discoverable from the face of the instrument. (Broom's Legal Maxims, 653.) The same author continues saying that thus it sometimes happens that in a statute, the language of which may fairly comprehend many different cases, some only are expressly mentioned, by way of example merely and not as excluding others of a similar nature; and in such cases this ordinary rule cannot apply. (Idem, 664.) And he further remarks that law axioms are nothing more than the conclusions of common sense which have been formed and approved by the wisdom of ages. (Idem, 666.)

In discussing this same maxim Mr. Edward Beal, an eminent English author, says that the method of construction summarized therein is one that certainly requires to be watched; and he agrees with the courts in remarking that "It is often a valuable servant, but a dangerous master to follow in the construction of statutes or documents. The *exclusio* is often the result of inadvertence or accident, and the maxim ought not to be applied when its application, having regard to the subject matter to which it is to be applied, leads to inconsistency or injustice." (Citing *Lowe* v. *Darling & Sons,* 2 K. B., 784; Beal's Cardinal Rules of Legal Interpretation, pp. 78 and 79.) Moreover, in thus applying the maxim *Expressio unius est exclusio alterius* to the case at bar, the court would be required to disregard other more important rules of interpretation and to overlook that fundamental test which is the intent of the legislature as expressed in the Code of Criminal Procedure itself. These rules of interpretation will be further considered later.

The title of the Code of Criminal Procedure in which the sections under consideration occur, which is Title V, treats of arrest, by whom and how made. It was evidently intended to prescribe methods of preserving order and not specially to guard the rights of people and secure them from improper arrests, which objects are secured by other statutes. Then

the whole title should be construed together and given such a construction as will harmonize all its provisions. (*Washington Market Co.* v. *Hoffman,* 101 U. S., 116; *Sherman* v. *Buick,* 93 U. S., 215; *N. L. C. Co.* v. *A. B. & C. Co.,* 91 U. S., 662 and 663; *Patterson* v. *Winn,* 24 U. S., 389; 1 Fed. Stat. Ann., p. 26.)

In considering questions of this nature it is well now and then to revert to first principles. It has been well said that a statute is the will of the legislature; and the fundamental rule of interpretation, to which all others are subordinate, is that such a law is to be expounded according to the intent of those that made it. (Maxwell Int. Stat., 1, 83, 84, 461; 1 Fed. Stat. Ann., p. 24.)

In arriving at the legislative intent it is often necessary to have recourse to subsidiary rules which are, in the specific points which they cover, of the utmost importance. In treating of Acts of Parliament, Jervis, C. J., in the case of *Mattison* v. *Hart.,* 14 C. B., 385, states the following as the "Golden Rule": "In construing statutes, and indeed all written instruments, the grammatical and ordinary sense of the words is to be adhered to, unless that would lead to absurdity, or some repugnancy or inconsistency with the rest of the instrument; in which case the grammatical and ordinary sense of the words may be modified so as to avoid that absurdity, repugnancy or inconsistency, but no further." This same rule was endorsed by Lord Wensleydale, Mr. Justice Burton, Lord Ellenborough and Lord Cranworth, in different cases. (Maxwell Int. Stat., 4 and 5, and cases cited.)

And this golden rule prevails, not only in England, but on this side of the Atlantic as well. Mr. Justice Lamar, speaking for the Supreme Court of the United States, said, in a well-known case: "To get at the thought or meaning expressed in a statute, a contract or a constitution, the first resort, in all cases, is to the natural signification of the words, in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words

convey a definite meaning which involves no absurdity, nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted, and neither the courts nor the legislature have the right to add to it or take from it. (*Newell* v. *People,* 7 N. Y., 9, 97; *Hills* v. *Chicago,* 60 Ill., 86; *Denn* v. *Reid,* 10 Pet., 524; *Leonard* v. *Wiseman,* 31 Md., 201, 204; *People* v. *Potter,* 47 N. Y., 375; Cooley Const. Lim., 57; Story on Const., sec. 400; *Beardstown* v. *Virginia,* 76 Ill., 34.)  So, also, where a law is expressed in plain and unambiguous terms, whether those terms are general or limited, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction. (*United States* v. *Fisher,* 2 Cranch, 358, 399; *Doggett* v. *Florida Railroad,* 99 U. S., 72; *Lake County* v. *Rollins,* 130 U. S., 670, 671; 1 Fed. Stats. Ann., pp. 24 and 58.  To the same effect see cases cited in note 7 on p. 24 of 1 Fed. Stats. Ann.)

As was long ago said by Chief Justice Marshall, "The spirit as well as the letter of a statute must be respected, and where the whole context of the law demonstrates a particular intent in the legislature to effect a certain object, some degree of implication may be called in to aid that intent." (*Durousseau et al.* v. *United States* [6 Cranch], 10 U. S., 314; *United States* v. *Tynen* [11 Wall.], 78 U. S., 88, 92; *King* v. *Cornell,* 106 U. S., 395, 396; *Tracy* v. *Tuffly,* 134 U. S., 206, 223; *Fisk* v. *Henarie,* 142 U. S., 459, 468; *District of Columbia* v. *Hutton,* 143 U. S., 18, 27; *United States* v. *Healey,* 160 U. S., 136, 147; The Paquete Habana, 175 U. S., 685; *Glover* v. *United States,* 164 U. S., 297; 1 Fed. Stats. Ann., p. 25.)

It is one of the primary canons of construction that all statutes should receive a reasonable interpretation, if the meaning thereof is at all doubtful; and that certainly is not a reasonable interpretation for which no sufficient reason can be assigned. (1 Fed. Stats. Ann., 2; *C. & O. Ry. Co.* v. *Miller,* 114 U. S., 187.)

Following the lead of Chief Justice Marshall, in an opinion which has been often quoted with approval, we may say that any construction of a statute which will cause great inconvenience is to be avoided, unless the meaning of the legislature be plain. (*United States* v. *Fisher,* 6 U. S. [2 Cranch], 386; *Knowlton* v. *Moore,* 178 U. S., 77; *Bate Ref. Co.* v. *Sulzberger,* 157 U. S., 37; *United States* v. *George,* 25 Fed. Cases, No. 15199; *Prentiss* v. *Elsworth,* 19 Fed. Cases, No. 11386; *In re* Wong Fock, 81 Fed. Rep., 561; Broom's Legal Maxims, 184; 1 Fed. Stats. Ann., p. XLIX.) The trial judge does not claim that he has followed the obvious intention of the legislature; but he arrives at the interpretation of the statute adopted after laborious argumentation. Let us then examine, to some extent, the inconvenience which must ensue if the construction placed upon these statutes by the District Court of Ponce is allowed to stand. If a policeman cannot arrest a violator of the law after nightfall without a warrant properly endorsed, even when before his eyes the statutes made and provided for the protection of the public peace and the preservation of good order and the protection of honest people in their rights of person and property are being plainly defied by criminals, a condition of affairs closely resembling anarchy must speedily follow.

A torch-light procession may be quietly proceeding along a public street, in this city, escorted by a platoon of policemen and a gang of hoodlums may set upon it with sticks and stones wounding and bruising peaceable people right and left; yet as long as no felony is committed the police would be powerless to make an arrest. The marshal of this court, when holding night sessions, could not arrest a disorderly person who chose to throw an inkstand at the chief justice, or to smite the secretary with his fist, or to assault an attorney who might be criticising a delinquent in his argument. Illustrations might be multiplied indefinitely but it is sufficient to refer to breaches of the following sections of the Penal Code, to wit: Sections 62, 145, 233, 281, 283, 293 and 299.

It is easy to see that the interpretation adopted by the trial court of sections 116 and 120 of the Code of Criminal Procedure not only leads to inconvenience but to absurdity which is equally contrary to the accepted canons of construction which should be carefully observed. (See 1 Fed. Stats. Ann., p. LII; *Sioux City & S. P. R. R. Co.* v. *United States,* 159 U. S., 360; *Murdock* v. *Memphis* [20 Wall.], 87 U. S., 628; *Glover* v. *United States,* 164 U. S., 300; *Lou ow Ben* v. *United States,* 144 U. S., 59; and cases cited in the last opinion by Mr. Chief Justice Fuller.) Thus, above all things to be avoided is any construction of a statute, or other written instrument, which leads us to an absurdity. This is particularly condemned by our greatest court. If the words of a statute are susceptible of more than one meaning the absurdity of the result of one construction is a strong argument against its adoption. A theory of construction which substantially asserts that the half is equal to the whole cannot be adopted. (*Glover* v. *United States,* 164 U. S., 300; 1 Fed. Stats. Ann., p. LII, and cases cited in note 7.)

Then, section 120 not being a limitation of the general and absolute proposition embodied in the first paragraph of section 116, we are constrained to hold that an arrest may be made by a police officer for a misdemeanor when committed in his presence, at any hour of the day or night; and thereupon estimating and finding the evidence submitted at the trial to be sufficient to maintain the allegations contained in the information, that the District Court of Ponce committed a fundamental error in charging the jury to bring in a verdict of acquittal in favor of the accused. For the reasons above stated, the judgment of the court below should be reversed and the cause remanded to the said court for other proceedings, in accordance with the law as expressed in this opinion.

*Reversed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.