## El Pueblo *v.* Ramos.

Apelación procedente de la Corte de Distrito de Ponce.

No. 481.—Resuelto en diciembre 16, 1912.

Derecho Penal—Arresto de Noche—Misdemeanor—Facultades de la Policía—Interpretación de Ley.—El artículo 116, párrafo 1, del Código de Enjuiciamiento Criminal, da facultades a un policía para arrestar a cualquier hora del día o de la noche a una persona que ha cometido un delito público en su presencia, ya sea *felony* o *misdemeanor,* sin necesidad de un mandamiento de arresto que tenga a su dorso una orden firmada por un magistrado para que se efectúe el arresto durante la noche, sin que dichas facultades estén limitadas en modo alguno por los preceptos del artículo 120 del mismo código.

Id.—Arresto de Noche—Interpretación de Ley.—La limitación consignada en el artículo 120 del Código de Enjuiciamiento Criminal con respecto al arresto de noche, se refiere únicamente al arresto de una persona en virtud de un mandamiento de prisión expedido por autoridad competente ante la cual haya sido denunciada dicha persona.

ID.—INTERPRETACIÓN DE LA PALABRA "DENUNCIADO."—La palabra "denunciado" que se emplea en el artículo 120 del Código de Enjuiciamiento Criminal no equivale a la palabra "imputado" y significa que existe una denuncia hecha por alguna persona ante la cual tal vez se ha cometido el delito y presentada a la autoridad competente para que expida el correspondiente mandamiento de prisión.

ID.—DISTINCIÓN ENTRE LOS CONCEPTOS "PERSONA DENUNCIADA" Y "PERSONA ACUSADA."—Jurídicamente hablando "persona denunciada" es aquella contra la cual se ha formulado denuncia ante autoridad competente redactada en una forma determinada con sujeción a cierto procedimiento que marca la ley. Ante la ley una persona está acusada de un delito únicamente cuando en virtud de un procedimiento legal dicha persona comparece y formula su contestación a la denuncia. Las investigaciones que hacen los fiscales, los jueces instructores y aun el gran jurado no determinan por sí solas la existencia de una "denuncia criminal."

ID.—ESTATUTOS TOMADOS DE OTROS ESTADOS—JURISPRUDENCIA DEL ESTADO DE DONDE SE HAN TOMADO LOS ESTATUTOS.—La regla en virtud de la cual es propio aceptar la interpretación dada a un estatuto por los tribunales del Estado de donde procede el mismo, no es de aplicación universal, sino que está sujeta a muchas excepciones y limitaciones.

ID.—"EXPRESSIO UNIUS EST EXCLUSIO ALTERIUS."—*Se resolvió* en el caso de autos que esta máxima no es de aplicación a este caso. Muchas veces la "exclusión" es una inadvertencia u omisión del legislador y en tales casos, lo mismo que cuando la aplicación de esa máxima trae consigo una incompatibilidad o injusticia, no debe ser aplicada.

ID.—INTERPRETACIÓN DEL TÍTULO DE UN CAPÍTULO DE UN CÓDIGO.—Los artículos de un código deben interpretarse también teniendo en cuenta el objeto de dichos artículos tal como consta en el título del capítulo y procurar que todos sus preceptos estén en harmonía.

ID.—INTERPRETACIÓN DE LEY—VOLUNTAD DEL LEGISLADOR.—La regla fundamental de interpretación de una ley a la cual todas las demás reglas están subordinadas, es que la ley debe ser interpretada de conformidad con la intención del legislador.

ID.—INTERPRETACIÓN DE LEY—INTENCIÓN DEL LEGISLADOR.—La regla primordial para determinar cual ha sido la intención del legislador al votar una ley es atenerse al sentido gramatical y ordinario de las palabras empleadas en la ley, a no ser que dicho sentido conduzca a un absurdo o produzca una incompatibilidad entre diversas partes de la ley, en cuyo caso puede uno desviarse de dicho sentido gramatical y ordinario de las palabras con el fin de evitar el absurdo o la incompatibilidad en la ley.

ID.—ARRESTO DE NOCHE Y SIN MANDAMIENTO—INTERPRETACIÓN DE LEY.—En el caso de autos *se resolvió* que la interpretación dada por la corte sentenciadora a los artículos 116 y 120 del Código de Enjuiciamiento Criminal en el sentido de que un policía no puede arrestar de noche a una persona que ha infringido la ley en su presencia, sin un mandamiento de arresto que tenga al dorso una orden expedida por autoridad competente autorizando expresamente que se haga el arresto de noche, anularía las leyes que tienden a conservar la paz pública y el buen orden y protección de las personas y traería como consecuencia un estado casi anárquico.

Los hechos están expresados en la opinión.

Abogado del Pueblo: *Sr. Charles E. Foote, Fiscal.*

La parte apelada no compareció.

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tribunal.

El día 17 de junio último el Fiscal presentó en la Corte de Distrito de Ponce una acusación en la que imputaba a Víctor Ramos la comisión de un delito contra el poder ejecutivo del gobierno, alegando sustancialmente en la misma, que el acusado en una fecha anterior a la presentación de la referida acusación, o sea, hacia el 27 de marzo del corriente año, en la ciudad de Ponce, que forma parte del distrito judicial del mismo nombre, voluntaria, criminal, ilegal y maliciosamente, y sabiendo que Pedro Morales era un funcionario ejecutivo que actuaba como policía insular, impidió por medio de la violencia que el referido policía cumpliera con su deber al tratar de arrestar a Epifanio Rosado que se encontraba cometiendo un delito menos grave (*misdemeanor*), a saber, una exposición indecente de su persona, librando violenta y forzosamente a dicho Rosado de la custodia del policía y proporcionándole el medio de escaparse.

El acusado formuló su alegación de no culpable y siendo el caso por un delito más grave (*felony*) se señaló para la celebración del juicio ante un jurado el día 5 de agosto de 1912 en cuyo día el juicio tuvo lugar. Tan pronto como había declarado Pedro Morales, único testigo del Fiscal, o sea el policía insular a que se ha hecho referencia en la acusación, el juez previa moción del acusado ordenó al jurado que trajera un veredicto de absolución a favor de dicho acusado, declarándole no culpable del delito que se le imputó en la acusación; por lo que el jurado volvió con un veredicto de conformidad con dicha instrucción, ordenando la corte que el acusado Víctor Ramos quedara en libertad. Inmediatamente el Fiscal tomó excepción a esta resolución de la corte y presentó su escrito de apelación, haciendo remitir a este tribunal

los autos, en donde aparece una exposición del caso y un pliego de excepciones que han sido debidamente aprobados.

La declaración del policía, Pedro Morales, que dió en el juicio y que se encuentra en los autos hace referencia en efecto a que una noche del mes de marzo del corriente año se encontraba vestido de uniforme y desempeñando su deber en los alrededores de la Plaza de la Abolición de la ciudad de Ponce y vió que Epifanio Rosado iba a orinarse en la calle en un sitio que había entre la boca de agua y un poste de luz eléctrica, yendo donde el mismo para impedir que realizara ese acto, pues había casas en las cercanías y podría fácilmente ser visto por muchachas y mujeres desde allí, y el testigo le dijo al expresado Rosado que si deseaba orinar podría ir al cafetín. Que entonces Rosado se retiró un poco y dijo: "Vaya al infierno el policía. Me orinaré aquí," lo que continuó haciendo exponiendo su persona al realizar semejante acto. Que el policía en su carácter de funcionario ejecutivo arrestó entonces a Rosado y estaba para llevarlo a la cárcel cuando el acusado, Víctor Ramos, intervino para impedir el arresto, diciendo a Rosado, "No vayas. No vayas a ninguna parte," y al policía "Este hombre no va a ninguna parte;" a lo que el policía contestó, "El va y Vd. también." Al tratar entonces el policía de arrestar a ambos hombres tuvo lugar una lucha entre los tres; o sea Epifanio Rosado, Víctor Ramos y el testigo, el policía que declaró, durante la cual Víctor Ramos agarró al policía por la chaqueta y le pegó mientras Rosado se escapaba. En esos momentos otros policías llegaron y arrestaron a Ramos solamente. Tal es, en resumen, toda la prueba que se presentó en el caso.

La corte en sus instrucciones al jurado expresó que el delito cometido por Epifanio Rosado era el de una exposición deshonesta de su persona, el que de acuerdo con nuestro estatuto es un delito menos grave (*misdemeanor*), y que según la ley no puede hacerse un arresto por un delito menos grave (*misdemeanor*) cometido durante las horas de la noche sin que exista un mandamiento judicial firmado por una auto-

ridad competente con un endoso en el que expresamente se diga que tal arresto puede hacerse durante las horas de la noche, manifestando, además, la corte, que la actitud del policía al tratar de arrestar a Rosado no solamente no estaba justificada sino que la ley la prohibía expresamente, y que la violencia empleada por Víctor Ramos no fué para impedir a un funcionario ejecutivo que cumpliera con su deber, y por tanto que no se había infringido el artículo 84 del Código Penal. Como fácilmente puede verse, esta resolución de la Corte de Distrito de Ponce tiene por objeto demostrar que con arreglo a nuestros estatutos no está autorizado el arresto de un ciudadano durante las horas de la noche cuando el delito que se comete es uno menos grave solamente (*misdemeanor*), aunque se realice en presencia del policía que hace el arresto a menos que dicho funcionario tenga en su poder un mandamiento de arresto y que al respaldo del mismo aparezca una orden debidamente firmada por un magistrado, para que se lleve a efecto dicho arresto durante las horas de la noche.

Examinemos los estatutos con respecto a esta cuestión.

El artículo 116, párrafo 1°: del Código de Enjuiciamiento Criminal, dice lo siguiente:

"Un oficial de orden público puede hacer un arresto en cumplimiento de una orden que le haya sido entregada con tal fin, o puede, sin una orden de arresto, detener a una persona:

"1. Por un delito público cometido, o que se ha intentado cometer, en su presencia. * * *."

Según el artículo 117. "Una persona particular puede arrestar a otra:

"1. Por un delito público cometido o que se ha intentado cometer en su presencia. * * *."

El artículo 118 autoriza a un magistrado para ordenar un arresto verbalmente, cuando el delito se comete en su presencia.

El artículo 119 autoriza "a la persona que esté haciendo

un arresto'' para requerir el auxilio de las personas que
estime necesarias para ayudarle a llevarlo a cabo.

El artículo 120 del mismo código dice lo siguiente:

· ''Si el delito. denunciado es un. *felony* (delito muy grave), puede
hacerse en cualquier día, y a cualquier hora del día o de la noche.
Si es un *misdemeanor* (delito menos grave), el arresto no puede
hacerse por la noche, a menos que se proceda por mandato de un
magistrado, escrito al dorso de la orden de arresto.''

Como puede verse, la corte de distrito en sus instrucciones
al jurado declaró que el artículo 116 estaba limitado por el
120 del mismo código y que en este caso el policía no podía
efectuar el arresto por la noche sin un mandamiento debida-
mente endosado. Esta nos parece una interpretación indebida
de los estatutos, pues con ella casi queda suspendido el poder
de la policía durante las horas de la noche. No creemos que
exista alguna contradicción entre los artículos citados si se les
interpreta debidamente. Por tanto, ambos deben ser interpre-
tados de modo tal que pueda dárseles efecto a ambos. El pri-
mero de los mencionados artículos autoriza el arresto por un
oficial de orden público de una persona que ha cometido un
delito público ya sea éste un delito grave (*felony*) o uno menos
grave (*misdemeanor*), cometido en presencia de dicho oficial
de orden público, y no establece dicho artículo diferencia al-
guna con respecto a las horas o momento del día o de la
noche. El arresto puede hacerse en cualquier momento. Los
términos de este artículo son generales y no están limitados
por ninguna disposición legal, a menos que sea por el artículo
120 del propio código, según lo ha resuelto la corte de distrito.
De una debida interpretación de ese artículo se verá que sig-
nifica, que cuando una persona ha sido *denunciada* por la co-
misión de un delito menos grave (*misdemeanor*) de acuerdo
con la ley, el mandamiento de prisión que se expida por virtud
de dicha *denuncia,* no podrá cumplirse durante la noche a
menos que así lo ordene de modo expreso o lo autorice un
magistrado. Las limitaciones contenidas en este artículo ha-

cen referencia a denuncias presentadas ante autoridad compe-
tente en relación con las cuales se han expedido mandamientos
de prisión, pero no fué el objeto de tales limitaciones afectar
los deberes de un funcionario de orden público según se ex-
presa en el artículo 116 del mismo código.   El error en que
ha incurrido inadvertidamente la corte sentenciadora proba-
blemente se debe a una mala interpretación de la palabra
española "denunciada" (*charged*), según se emplea en el ar-
tículo 120 que la corte declaró que era equivalente a la palabra
"imputada" (*imputed*), resolviendo la corte que la palabra
"denunciada" quería decir una denuncia o cargo informal
hecho por el policía en presencia del cual el delito pudo ha-
berse cometido, así como también un cargo formal presentado
ante una autoridad competente como base para la expedición
de un mandamiento de prisión.

La corte sentenciadora en apoyo de su opinión sostiene
que el artículo correspondiente de nuestro código fué tomado
del 840 del Código Penal de California, a saber:

"Si el delito denunciado es un *felony*, puede hacerse el arresto
en cualquier día y en cualquier momento del día o de la noche.   Si
es un delito menos grave (*misdemeanor*) no puede verificarse el
arresto de noche a menos que lo ordene el magistrado al dorso del
mandamiento, *excepto en el caso de que el delito se cometa en pre-
sencia del funcionario que verifica el arresto.*"

Comparando estos artículos se verá que el 116 de nuestro
código se diferencia del 840 del Código de California en la
omisión que hace de las palabras *"excepto cuando el delito
se comete en presencia del funcionario que verifica el arresto."*

Con respecto a esta omisión se ha alegado que nuestra
legislatura al tomar el estatuto de Puerto Rico del de Cali-
fornia omitió expresamente al reproducir dicho artículo en
nuestro código, la única excepción en el expresado artículo,
prohibiendo que no se verificara el arresto de ninguna persona
por la noche por un delito menos grave (*misdemeanor*), ex-
cepto en el caso de que dicho arresto estuviera autorizado de
modo expreso por virtud de un mandamiento y del correspon-

diente endoso sobre el mismo.  Se alega que ésta es una prueba clara y concluyente con respecto a la intención de la Legislatura que de modo absoluto prohibe o impide que un funcionario de orden público pueda verificar un arresto por un delito menos grave (*misdemeanor*) cometido en su presencia a menos que sea mediante orden expresa de un magistrado.

El verbo "denunciar" (*charge*) no es sinónimo de "imputar" (*impute*); sino que tiene una significación legal bien definida en la jurisprudencia.  *Denunciado por un delito* es una expresión que significa algo más que expresar que existen sospechas de que una persona ha cometido un delito o de que su comisión se imputa a dicha persona.  Esa expresión significa que se ha presentado una denuncia o acusación contra ella ante alguna corte en la forma en que ordinariamente se establecen los procedimientos judiciales.  (*United States* v. *Patterson,* 150 U. S., 68; *Morgan Ex parte,* 20 Fed. Rep., 308; *Ryan Ex parte,* 44 Cal., 555; *People* v. *Garnett,* 129 Cal., 364; 61 Pac., 1114, 1115; *Day* v. *Inhabitants of Otis,* 90 Mass., 478 y 479.

Una "denuncia criminal," propiamente hablando, existe solamente cuando se ha presentado una denuncia en debida forma por escrito contra el acusado ante un magistrado y ha comenzado la causa debidamente.  Es cierto que el sentido en que corrientemente se interpreta la palabra es  igual a si se dijera "accusation," y se usa libremente con referencia a todas las acusaciones ya se hagan oralmente en conversación particular, públicamente en los periódicos o de alguna otra manera. Pero en el languaje jurídico la palabra "denuncia" esta debidamente limitada a aquellas acusaciones a las cuales se les da una forma determinada en un procedimiento ordinario. Para la ley una persona está "acusada de un delito" solamente cuando se establece un procedimiento legal por virtud del cual dicha persona comparece y formula su contestación a la expresada denuncia.  Las meras investigaciones que se toman como base por los Fiscales, y hasta las preguntas y

consideraciones que hacen los jueces instructores, o el gran jurado para determinar si hay causa bastante para iniciar un procedimiento, no establecen por si una "denuncia criminal." "Y se ha declarado que ese es el significado de la palabra según ha sido empleada en los Estatutos Revisados, artículo 827, por el que se conceden dietas a los Comisionados de los Estados Unidos para oir y resolver denuncias criminales estando limitados a las denuncias formales que se formulan por escrito con arreglo a ley, pero no incluye el examen que se hace de los denunciantes para determinar si procede o nó un mandamiento de prisión." (*Estados Unidos* v. *Patterson,* 150 U. S., 65.)

Es cierto que el artículo 120 de nuestro código puede haber sido tomado del 840 del Código Penal de California pero también ha podido ser tomado del Código de Montana o del de Idaho, cuyo último código es el más parecido, pues son exactamente iguales al nuestro y fueron probablemente tomados del anterior Código de California en donde se omite el último párrafo. Se verá que el artículo 120 del Código de Enjuiciamiento Criminal de Puerto Rico es sustancialmente una copia del 1636 del Código Penal de Montana que es idéntico al artículo 5242 del Código Penal de Idaho, lo que nos parece suficiente para probar que el artículo de nuestro Código de Enjuiciamiento Criminal es muy probable que haya sido tomado del correspondiente código de uno de estos últimos Estados y nó del Código de California. Además la regla que exige que las cortes adopten la interpretación que se ha dado a otro estatuto por la Corte Suprema del estado del cual ha podido ser tomado por la Legislatura, es una regla general y no es de aplicación universal sino que está sujeta a muchas excepciones y limitaciones. (*Mann* v. *Carter,* 74 N. H., 345; 15 L. R. A. [N. S.], 150; *Texas & Pacific Ry. Co.* v. *Humble,* 181 U. S., 65; *Coulam* v. *Doull,* 133 U. S., 216; *State* v. *Campbell,* 73 Kan., 688; 85 Pac., 784; Endlich Interpretation of Statutes, sec. 371; 36 Cyc., 1154, 1157.)

En apoyo de la decisión de la corte inferior se ha citado

y se ha tratado de darle aplicación a la bien conocida máxima
*"Expressio unius est exclusio alterius."* Esta máxima no
tiene debida aplicación a este caso. Es el Código de Puerto
Rico y nó el de California, el que tenemos que interpretar. No
hay en nuestro código excepción alguna por la que sea necesario recurrir a dicha máxima. La excepción ocurre solamente
en el Código de California. Pero examinemos concisamente
las autoridades con respecto a esa máxima y al efecto que ha
de darse a la misma.

En el tomo segundo del Diccionario Legal de Bouvier, página 353, se nos da la definición de dicha expresión y se hace
referencia a algunas autoridades, a saber: *"Expressio unius
est exclusio alterius."* La expresión de una cosa es la exclusión de otra. (Co. Litt., 210; Broom's Leg. Max., 650, 668;
3 Bingh. N. C., 85; 8 Scott N. R., 1013; 12 M. & W., 761; 16
id., 244; 2 Curt C. C., 365; 6 Mass., 84; 11 Cush., 328; 98
Mass., 29; 117 id., 448; 3 Johns Ch., 110; 36 Fed. Rep., 880;
74 id., 535; 104 U. S., 25; 4 Biss., 35; a los que puede agregarse Beal's Cardinal Rules of Interpretation, p. 78; 1 Federal
Statutes Annotated, LXIX *et seq.,* Maxwell on Interpretation
of Statutes 504, 529.)

Al comentar sobre la máxima *"Expressio unius est exclusio alterius,"* el Dr. Broom observa que debe tenerse gran cautela al aplicarse, pues no es de aplicación general según indicó
Lord Campbell en el caso de *Saunders* v. *Evans* (8 H. L.
Cases, 729), sino que su aplicación depende de la intención del
otorgante según que la misma aparezca de la faz del instrumento. (Máximas Legales de Broom, 653.) El mismo autor
continúa expresando que a veces ocurre que en un estatuto
cuyo texto puede razonablemente comprender muchos casos
diferentes solamente algunos se mencionan por vía de ilustración simplemente y no para excluir a otros de igual naturaleza,
y en tales casos esta regla ordinaria no puede aplicarse. (Id.,
664.) Y llama, además, la atención hacia el hecho de que los
axiomas legales no son sino las conclusiones del sentido común

que han sido formadas y aprobadas por la sabiduría de los siglos.  (Id., 666.)

Al discutir esta misma máxima el Sr. Edward Beal, un eminente autor inglés, expresa que el método de interpretación compendiado en la misma es uno que ciertamente exige cuidado, y está conforme con las cortes al observar que "Es a menudo un gran auxiliar, pero un principio peligroso para observar en la interpretación de estatutos o documentos.  La *exclusión* es a menudo el resultado de la inadvertencia o accidente y la máxima no debe ser aplicada cuando su aplicación, teniendo en cuenta la materia en cuestión a que ha de ser aplicada, conduce a incompatibilidad o injusticia."  (Se cita el caso de *Lowe* v. *Darling & Son,* 2 K. B., 784.)  Reglas Cardinales de Interpretación de Ley de Beal, páginas 78 y 79.)  Además, al aplicar así la máxima *"Expressio unius est exclusio alterius"* al caso en cuestión, la corte tendría que desatender otras reglas de interpretación más importantes y pasar por alto esa regla fundamental o sea la intención de la Legislatura según ha sido expresada en el propio Código de Enjuiciamiento Criminal.  Estas reglas de interpretación serán consideradas con mayor amplitud más adelante en esta opinión.

El título del Código de Enjuiciamiento Criminal en donde aparecen los artículos que consideramos, o sea el Título V, trata del arresto y por quién y cómo debe hacerse.  Evidentemente que la intención fué la de prescribir los métodos de conservar el orden y no especialmente vigilar los derechos del pueblo y protegerlos contra los arrestos indebidos, cuyos fines están garantizados por otros estatutos.  Por tanto, todo el título debe ser interpretado conjuntamente y dársele tal interpretación de manera que todas sus disposiciones estén en harmonía.  (*Washington Market Co.* v. *Hoffman,* 101 U. S., 116; *Sherman* v. *Buick,* 93 U. S., 215; *New Lamp Chimney Co.* v. *Ansonia Brass & C. Co.,* 91 U. S.; 662 y 663; *Patterson* v. *Winn.,* 24 U. S., 389; 1 Fed. Stat. Ann., XXVI.)

Al considerar cuestiones como ésta conviene que lo mismo ahora que luego volvamos a examinar los primeros prin-

cipios. Se ha dicho previamente que un estatuto es la volun-
tad de la Legislatura; y la regla fundamental de interpreta-
ción a la cual todas las demás están subordinadas es la de que
dicha ley debe interpretarse de conformidad con la intención
de los que la hicieron. (Maxwell Int. Stat., 1, 83, 84, 461; 1
Fed. Stat. Ann., XXIV.)

Para llegar a conocer la intención de la Legislatura a me-
nudo se hace necesario recurrir a reglas subsidiarias, las que
son de la mayor importancia en los puntos específicos com-
prendidos en ellas. Al tratar de los Actos del Parlamento,
el Juez Presidente Jervis, en el caso de *Mattison* v. *Hart,* 14
C. B., 385, establece la siguiente como ''Regla Aurea'': ''Al
interpretar estatutos y, en verdad, todos los documentos es-
critos, deberán tenerse en cuenta el sentido gramatical y ordi-
nario de las palabras, a menos que el mismo conduzca a un
absurdo o a alguna repugnancia o incompatibilidad que en el
resto del documento pueda resultar, en cuyo caso el sentido
gramatical y ordinario de las palabras puede ser modificado
de modo tal que evite el error, repugnancia o incompatibilidad
solamente.'' Esta misma regla ha sido citada con aprobación
por Lord Wensleydale, Mr. Justice Burton, Lord Ellen-
borough, y Lord Cranworth, en diferentes casos. (Maxwell
Int. Stat., 4 y 5 y casos citados.)

Y esta regla áurea prevalece no solamente en Inglaterra
sino también hacia este lado del Atlántico. El Juez Asociado,
Sr. Lamar, al hablar a nombre del Tribunal Supremo de los
Estados Unidos, dijo en un caso muy conocido lo siguiente:
''Para poder llegar a conocer el pensamiento o efecto, con-
tenido en un estatuto, contrato o constitución, lo primero que
deberá hacerse en todos los casos, es buscar la significación
natural de las palabras en el orden gramatical en que hayan
sido colocadas por el redactor del instrumento. Si las pala-
bras tienen una significación determinada de la que no puede
resultar un error, o alguna otra contradicción de otras partes
del instrumento, entonces esa significación aparente de la faz
del instrumento debe ser aceptada y ni las cortes ni la Legisla-

tura están autorizadas para hacer ninguna adición o supresión a las mismas. (*Newell* v. *People,* 7 N. Y., 9, 97; *Hills* v. *Chicago,* 60 Illinois, 86; *Denn* v. *Reid,* 10 Pet., 524; *Leonard* v. *Wiseman,* 31 Maryland, 201, 204; *People* v. *Potter,* 47 N. Y., 375; Cooley Const. Lim., 57; Story on Const., Sec. 400; *Beardstown* v. *Virginia,* 76 Illinois, 34.) Así también cuando una ley se expresa en términos claros e inequívocos ya sean estos términos generales o limitados deberá considerarse que la intención de la Legislatura fué significar lo que dichos términos claramente expresan y, por tanto, que no hay motivo para hacer una interpretación de los mismos. (*United States* v. *Fisher,* [2 Cranch], 358, 399; *Doggett* v. *Florida Railroad,* 99 U. S., 72; *Lake County* v. *Rollins,* 130 U. S., 670, 671; 1 Fed. Stats., Ann. XXIV y LVI. Véase también, con respecto a esta cuestión los casos citados en la nota 7, p. XXIV de 1 Fed. Stat. Ann.).

Según ya hace tiempo expresó el Juez Presidente Sr. Marshall, "Deberá respetarse lo mismo el espíritu que la letra de un estatuto, y cuando todo el contexto de la ley demuestra una intención particular por parte de la Legislatura para llevar a cabo determinado propósito, puede recurrirse a cierto grado de deducción como ayuda para descubrir dicha intención." (*Durousseau et al.* v. *United States* [6 Cranch], 10 U. S., 314; *United States* v. *Tynen,* [11 Wall], 78 U. S., 88, 92; *King* v. *Cornell,* 106 U. S., 395, 396; *Tracy* v. *Tuffly,* 134 U. S., 206, 223; *Fisk* v. *Henarie,* 142 U. S., 459, 468; *District of Columbia* v. *Hutton,* 143 U. S., 18, 27; *United States* v. *Healey,* 160 U. S., 136, 147; The Paquete Habana, 175 U. S., 685; *Glover* v. *United States,* 164 U. S., 297; 1 Fed. Stat. Ann., XXV [25]. Es uno de los principios elementales de interpretación de estatutos que ellos deben recibir una interpretación razonable y equitativa si su significación es dudosa en absoluto, y esa ciertamente no es una interpretación razonable para la cual no pueda alegarse una razón suficiente. (1 Fed. Stat. Ann., 2; *Chesapeake & Ohio Ry. Co.* v. *Miller,* 114 U. S., 187.)

Adoptando la norma del Juez Presidente Sr. Marshall en una opinión que ha sido frecuentemente citada con aprobación, podemos expresar que debe evitarse cualquier interpretación del estatuto que dé lugar a un gran inconveniente a menos que resulte clara la intención de la Legislatura. (*United States* v. *Fisher,* 6 U. S., [2 Cranch], 386; *Knowlton* v. *Moore,* 178 U. S., 77; *Bate Ref. Co.* v. *Sulzberger,* 157 U. S., 37; *United States* v. *George,* 25 Fed. Cases No. 15199; *Prentiss* v. *Elsworth,* 19 Fed. Cases. No. 11386; *In re* Wong Fock, 81 Fed. Rep., 561; Broom's Legal Maxims, 184; 1 Fed. Stats. Ann. XLIX [49].) El juez sentenciador no alega que ha seguido la clara intención de la Legislatura, sino que llega a la interpretación del estatuto adoptado después de una discusión laboriosa. Examinemos, por tanto, con alguna extensión, el inconveniente que habría de resultar si se permitiera que subsistiera la interpretación que ha sido dada a estos estatutos por la Corte de Distrito de Ponce. Si un policía no puede arrestar a un infractor de la ley después de caída la noche, sin un mandamiento debidamente endosado, aunque hayan sido abiertamente infringidos por criminales en su presencia los estatutos que han sido aprobados para conservar la paz pública y el buen orden, así como la protección de las personas honradas en sus derechos civiles y en su propiedad, esto daría por resultado un estado general de cosas que sería semejante al de una anarquía.

Al pasar tranquilamente por una calle pública de esta ciudad una alborada vigilada por un pelotón de policías, una cuadrilla de pillos puede atacar a la misma dando palos y tirando piedras a derecha e izquierda y causando heridas y golpes a gente pacífica; pero como no se comete ningún delito grave (*felony*) la policía no tendría poder alguno para hacer un arresto. Al celebrarse sesiones por la noche el márshal de esta corte no podría arrestar a una persona desordenada que se resolvió a tirar un tintero al juez presidente, o a pegarle al secretario con los puños, o a atacar a un abogado que podría estar criticando a un delincuente con su argumentación. Otros

ejemplos como éstos podrían citarse indefinidamente, pero es bastante con que hagamos referencia a las infracciones de los citados artículos del Código Penal: artículos 62, 145, 233, 281, 283, 293 y 299.

Se ve fácilmente que la interpretación adoptada por la corte sentenciadora de los artículos 116 y 120 del Código de Enjuiciamiento Criminal, no solamente conducen a inconveniencia sino también a un absurdo que es asimismo contrario a los reconocidos principios sobre interpretación que deben observarse cuidadosamente. (Véase 1 Fed. Stat. Ann., LII [52]; *Sioux City & S. P. R. R. Co.* v. *United States,* 159 U. S., 360; *Murduck* v. *Memphis,* [20 Wall] 87 U. S., 628; *Glover* v. *United States,* 164 U. S., 300; *Lou ow Ben* v. *United States,* 144 U. S., 59; y casos citados en la última opinión del Juez Presidente Sr. Fuller. Lo primero que debe evitarse es dar a un estatuto o a cualquier otro instrumento escrito una interpretación que nos pueda conducir a un absurdo. Esto ha sido condenado de modo especial por nuestro más alto tribunal. Si las palabras de un estatuto son susceptibles de dárseles más de una interpretación, es un argumento poderoso contra la adopción de la misma, el error que resulte de ella. La teoría relativa a la interpretación en la que se afirma sustancialmente que la mitad es igual al todo no puede ser adoptada. (*Glover* v. *United States,* 164 U. S., 300; 1 Fed. Stats. Ann., LII, y casos citados en la nota 7.)

Por tanto, no constituyendo el artículo 120 una limitación a la proposición general y absoluta contenida en el primer párrafo del artículo 116, estamos obligados a declarar que puede verificarse un arresto por un funcionario de la policía por un delito de *misdemeanor* cuando se comete a su presencia en cualquier hora del día o de la noche; y por consiguiente, estimando y considerando que la prueba sometida durante el juicio es suficiente para sostener las alegaciones contenidas en la acusación, somos de opinión de que la Corte de Distrito de Ponce cometió un error fundamental al instruir al jurado que dictara un veredicto absolutorio a favor del acusado.

Por las razones anteriores, la sentencia dictada por la corte inferior debe ser revocada y la causa devuelta a dicha corte inferior para los fines procedentes, de acuerdo con la ley, según ha sido expresada en esta opinión.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.